1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   United States of America,                    No. 2:12-cr-00445-KJM

12                        Plaintiff,               ORDER

13        v.

14   Alfred Bryant Tribbey,

15                        Defendant.

16

17        The government alleges defendant Alfred Tribbey did not comply with the conditions of

18   his supervised release because he violated a domestic violence protective order, did not report

19   contacts with law enforcement and an arrest, and did not report that he was ordered to move from

20   where he lived.  As explained in this order, the government has proven three of the four alleged

21   violations.

22   **I.      EVIDENCE**

23        In 2018, Tribbey pleaded guilty to participating in a drug conspiracy.  *See* Plea

24   Agreement, ECF No. 135.  He was sentenced to 77 months' imprisonment and 60 months'

25   supervised release.  Judgment & Commitment, ECF No. 143.  The court imposed several

26   conditions on his supervised release, including the following:

27        You must not commit another federal, state or local crime.

1

1          . . .

2          You must live at a place approved by the probation officer. If you
3          plan to change where you live or anything about your living
4          arrangements (such as the people you live with), you must notify the
5          probation officer at least 10 days before the change. If notifying the
6          probation officer in advance is not possible due to unanticipated
7          circumstances, you must notify the probation officer within 72 hours
8          of becoming aware of a change or expected change.

9          . . .

10         If you are arrested or questioned by a law enforcement officer, you
11         must notify the probation officer within 72 hours.

12   *Id.* at 3–4.

13         After Tribbey completed his prison sentence, a Probation Officer visited him where he

14   was living with his then-fiancée.  Evid. Hr'g Tr. at 18, ECF No. 165.  The officer did not see any

15   problems.  *See id.*  But less than a month later, late on a Friday night, a judge of the California

16   Superior Court issued a one-week emergency protective order against Tribbey to prevent

17   domestic violence.  *See* Gov't Ex. 4; Evid. Hr'g Tr. at 45–47.  The order directed Tribbey to

18   immediately move out of the house where he had been living with his former fiancée, to stay at

19   least 100 yards away from her and her house, and not to contact her "by any means," including by

20   phone and electronically, among several other restrictions.  *See* Gov't Ex. 4; Evid. Hr'g Tr. at 45–

21   47.

22         The day after the protective order was issued, Tribbey's former fiancée called his

23   Probation Officer several times.  Evid. Hr'g Tr. at 20, 22.  These calls led the officer to suspect

24   Tribbey had committed a crime.  *Id.* at 22.  She began investigating.  A detective at a local law

25   enforcement agency later told her he had been in "contact" with Tribbey on the day the state court

26   issued the protective order.  *Id.* at 24.  No details of this "contact," however, are in the record.

27         On the Monday after the emergency restraining order was issued, Tribbey's former

28   fiancée contacted the Sheriff's Department.  *See id.* at 41.  When a deputy responded, she told her

29   that Tribbey had attempted to call and message her many times over the weekend, that he had

30   followed her out of a mobile phone store to her car, and that he had been near her home.  *See id.*

2

1    at 42.  She showed the deputy records of Tribbey's calls and a message she had received from

2    him on Facebook Messenger.  *Id.* at 51–52.  Based on this report, the deputy concluded that

3    Tribbey had violated the protective order.  *Id.* at 48.

4         Later the same day, Tribbey called the Sheriff's Department and asked for help retrieving

5    his belongings from his former fiancée's house.  *Id.* at 55.  The deputy who had spoken to his

6    former fiancée earlier that day persuaded Tribbey to meet in a nearby parking lot.  *Id.* at 56.

7    When they met, Tribbey admitted he had contacted his former fiancée and had also attempted to

8    speak to her in person at the mobile phone store.  *See id.* at 57.  He also admitted he had retrieved

9    his car from where it had been parked near his former fiancée's house, and he admitted he had

10   known about the protective order at the time.  *See id.*  In the deputy's assessment, Tribbey had

11   violated the protective order fourteen times.  *Id.* at 59.  She and her partner arrested him.  *Id.*  The

12   parties agree he was released again the same day and was not detained during the next 72 hours.

13   *See* Gov't Br. at 11, ECF No. 166; Def.'s Br. at 6, ECF No. 167.

14        The Probation Officer assigned to Tribbey's case found a report using Sacramento

15   County's inmate locater, which confirmed to her satisfaction that Tribbey had been arrested and

16   released.  *See id.*; Gov't Ex. 3.  She also reviewed a report of his arrest for violating the

17   restraining order.  Evid. Hr'g Tr. at 25.  Tribbey did not attempt to report his arrest or his removal

18   from his former fiancée's home until after the protective order expired.  *See id.* at 30.

19        This court issued a warrant for Tribbey's arrest based on charges he violated the

20   conditions of his supervised release, ECF No. 147, *superseded by* ECF No. 158.  The petition

21   includes four charges:

22        (1)    A violation of California law based on a violation of the protective order.  *See* Pet.

23               at 2, ECF No. 158.

24        (2)    Failure to notify the Probation Officer within 72 hours after contact with law

25               enforcement officers.  *See id.*

26        (3)    Failure to notify the Probation Officer within 72 hours of an arrest.  *See id.*

27        (4)    Failure to notify the Probation Officer within 72 hours of his removal from his

28               former fiancée's home, i.e., a change of address.  *See id.* at 3.

1    Tribbey was detained after a hearing before the Magistrate Judge.  ECF No. 150.  After the

2    petition was filed, but before his first appearance before the Magistrate Judge, he attempted to

3    contact the Probation Officer from the jail where he was detained.  Evid. Hr'g Tr. at 30.  He also

4    requested a hearing to contest the evidence of the four charged violations, and the court

5    conducted a hearing on June 6, 2022.  Mins., ECF No. 160.  Two witnesses testified: the

6    Probation Officer assigned to Tribbey's case, and the Sacramento County Sheriff's Deputy who

7    arrested him on suspicion of violating the protective order.  *See id.*  The parties then filed written

8    closing arguments.  *See generally* Gov't Br., ECF No. 166; Def.'s Br., ECF No. 167.

9            In its post-hearing brief, the government informed the court for the first time that Tribbey

10   had pleaded *nolo contendere* to violating the state court's protective order.  Gov't Br. at 4, 10–11;

11   Gov't Ex. 5, ECF No. 166.  Although Tribbey had entered his plea before the evidentiary hearing,

12   the government claims it did not learn about his plea until after the hearing ended.  Gov't Br. at 4.

13   Tribbey objects to the introduction of his plea and moves to "strike it from the record of this case"

14   because its late submission precludes him "from presenting evidence to counter it."  Def.'s Br.

15   at 5.  He does not explain, however, what evidence he would offer now.  The court may also take

16   judicial notice of the state court records.  *See United States v. Tanco-Pizarro*, 892 F.3d 472, 478

17   n.2 (1st Cir. 2018) (taking judicial notice of defendant's guilty plea during revocation

18   proceedings); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (taking judicial notice

19   of state court criminal conviction as undisputed matter of public record).  The court overrules

20   Tribbey's objection and considers the state court's records of his plea and conviction.

21           Tribbey also objects to some testimony the government offered as hearsay.  *See* Def.'s Br.

22   at 2–3, 4.  He objected to the same testimony at hearing as well.  *See* Evid. Hr'g Tr. at 20–23, 51–

23   52, 72.  Although defendants are indeed ordinarily "guaranteed the right to confront and cross-

24   examine adverse witnesses at a revocation hearing," *United States v. Comito*, 177 F.3d 1166,

25   1170 (9th Cir. 1999), it is not necessary to reach this issue.  Tribbey's own statements are not

26   hearsay.  *See* Fed. R. Evid. 801(d).  And aside from those statements, the court has relied on no

27   out-of-court statements as proof of the matter the declarant asserted.  The hearsay objections are

28   thus moot.

1   **II.   DISCUSSION**

2          A district court may revoke a term of supervised release if it "finds by a preponderance of

3   the evidence that the defendant violated a condition of his supervised release."

4   18 U.S.C. § 3583(e)(3).  The court considers each of the government's four charges measured

5   against this standard.

6          **A.      New Violation of California Criminal Law (Charge One)**

7          In the first charge, the government alleges Tribbey violated the terms of his supervised

8   release because he was "arrested and charged" for violating the restraining order.  Pet. at 2.  The

9   condition in question, however, does not prohibit arrests and charges.  Under this condition, he

10  "may not *commit* another federal, state, or local crime."  Judgment & Commitment at 3 (emphasis

11  added).  So to prove Tribbey violated this condition, the government must show by a

12  preponderance of the evidence both that he violated the restraining order and that doing so was a

13  crime.

14         The government has shown by a preponderance of evidence that Tribbey violated the

15  restraining order.  The order barred him from contacting his former fiancée by phone or electronic

16  means and from coming within 100 yards of her or her home.  *See* Gov't Ex. 4; Evid. Hr'g Tr. at

17  45–47.  Tribbey admitted to a Sheriff's Deputy that he had called and messaged his former

18  fiancée, retrieved his car from where it was parked within 100 yards of her home, and followed

19  her to her car from a mobile phone store, all while the restraining order was in place.  *See* Evid.

20  Hr'g Tr. at 57.  The same deputy also testified that she saw records of Tribbey's calls and

21  messages on his former fiancée's phone.  *Id.* at 51–52.

22         The government has also shown by a preponderance of evidence that this violation was a

23  crime under California law.  In California, "[a]ny intentional and knowing violation of a

24  protective order . . . is a misdemeanor."  Cal. Penal Code § 273.6(a).  The government must

25  therefore prove Tribbey's violation was at least "knowing."  It has done so.  Tribbey admitted he

26  was aware of the restraining order.  Evid. Hr'g Tr. at 57.  He received a copy the night it was

27  issued.  *See* Gov't Ex. 4; Evid. Hr'g Tr. at 50.  And he later pleaded *nolo contendere* to violating

28  section 273.6(a), which the state court noted was the same as a guilty plea, Gov't Ex. 5 at 2.

1        Tribbey argues the restraining order was "vague, ambiguous, and impossible to comply

2    with" because it demanded both that he stay away from his former fiancée's home and

3    immediately move out, which required that he remove things from the home. *See* Def.'s Br. at 4.

4    This argument is unavailing on its face. But it begs the question, does Tribbey mean to argue, for

5    example, that the order deprived him of due process? *Cf. Johnson v. United States*, 576 U.S. 591,

6    595–96 (2015) (discussing Fifth Amendment protections against vague criminal laws). If so,

7    what would that deprivation mean for the terms of his supervised release? Tribbey does not say.

8    Nor is his argument persuasive on its own terms. It does not refute the government's evidence

9    that Tribbey violated the order by contacting his former fiancée and following her out of the

10    mobile phone store. He does not claim the order was vague in prohibiting these contacts. Nor

11    did the restraining order prohibit him from retrieving his belongings after it expired a week later.

12    The government has proven its first charge.

13        **B.    Notice of Law Enforcement "Contact" (Charge Two)**

14        The government alleges in its second charge that Tribbey violated the conditions of his

15    supervised release because he did not report that "he had contact with Sacramento County

16    Sheriff's Deputies after they responded to his home." Pet. at 2. The conditions of Tribbey's

17    supervised release did not require him to report every "contact" with law enforcement officers.

18    He was required to notify the Probation Officer if he was "arrested or questioned by a law

19    enforcement officer." Judgment & Commitment at 4. The government has not offered evidence

20    that Tribbey was questioned or arrested when officers came to his home. *Cf.* Evid. Hr'g Tr. at 24

21    (testifying second-hand about reports of "contact" with officers). Nor is it clear from the

22    arresting deputy's testimony that officers questioned Tribbey before arresting him. Tribbey

23    contacted the Sheriff's Department and asked them to meet him, and the arresting deputy agreed

24    with the government's suggestion that the encounter was an "interaction" or "back and forth,"

25    which is not necessarily "questioning." *See* Evid. Hr'g Tr. at 55–59. The government has not

26    proven its second charge by a preponderance of the evidence.

1        **C.      Notice of Arrest and Relocation (Charges Three and Four)**

2            In charges three and four, the government alleges Tribbey violated the terms of his

3    supervised release because he did not report his arrest or his expulsion from his home within 72

4    hours.  Pet. at 2–3.  As noted above, Tribbey was required to report any arrest to the Probation

5    Officer within 72 hours.  Judgment & Commitment at 4.  He also was required to report any

6    change of address "at least 10 days before the change" unless it was "not possible due to

7    unanticipated circumstances," in which case he was required to "notify the probation officer

8    within 72 hours of becoming aware of a change or expected change."  *Id.*

9            The government has proven by a preponderance of evidence that Tribbey was arrested.

10   *See* Evid. Hr'g Tr. at 59.  He did not tell his Probation Officer about this arrest, *id.* at 30, which he

11   concedes, *see* Def.'s Br. at 6.  Tribbey asks the court to excuse the failure because he was arrested

12   again a few days after the unreported arrest.  *See id.*  It is undisputed, however, that Tribbey was

13   not detained during the 72 hours starting immediately after his first arrest, which gave him time to

14   fulfill his obligations under the terms of his supervised release.  *See id.*

15           The government has also proven by a preponderance of evidence that Tribbey did not

16   report he would no longer be living with his former fiancée.  He was ordered out of his former

17   fiancée's home and did not notify his Probation Officer.  *See* Gov't Ex. 4; Evid. Hr'g Tr. at 30,

18   45–47.  The government has proven charges three and four.

19   **III.   CONCLUSION**

20           The government has proven charges one, three, and four.  This matter is set for a

21   dispositional hearing on November 28, 2022 at 9 a.m.

22           IT IS SO ORDERED.

23   DATED:  October 28, 2022.

CHIEF UNITED STATES DISTRICT JUDGE